IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

APRIL LEE YOHE,     : Civil No. 1:24-CV-499
            :
    Plaintiff,    :
            :
 v.          :
            : (Chief Magistrate Judge Bloom)
MICHELLE KING, Acting   :
Commissioner of Social Security,[1] :
            :
    Defendant .   :

## MEMORANDUM OPINION

## I. Introduction

April Lee Yohe filed an application for Supplemental Security Income under Title XVI of the Social Security Act on September 13, 2021. (Doc. 15 at 1). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Yohe was not disabled from her alleged onset date of disability of September 13, 2021, through March 15, 2023, but that she did become disabled on March 16, 2023. (Tr. 13-40).

---

[1] Michelle King became the acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Michelle King is substituted as the defendant in this suit.

Yohe now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim for benefits for the period between September 13, 2021, and March 15, 2023.

## II.    <u>Statement of Facts and of the Case</u>

On September 13, 2021, Yohe applied for supplemental security income, citing an array of physical and emotional impairments, including chronic obstructive pulmonary disease ("COPD"), rheumatoid arthritis, pinched nerve, hearing loss, depression, anxiety, bilateral leg and foot swelling, right hand swelling, and "two other personalities." (Tr. 110). Yohe was 53 years old at the time of the alleged onset of disability, had a ninth-grade education, and had past employment as shipping/receiving

clerk, cashier, deli clerk, sandwich maker, and landscaper. (Tr. 78-79, 277).

With respect to these alleged impairments the record revealed the following: during the relevant period, Yohe treated with her primary care provider, Certified Registered Nurse Practitioner ("CRNP") Deidania Rosado, at University of Pittsburgh Medical Center Newport Family Care ("UPMC Newport"). (Tr. 391). On January 18, 2018, CRNP Rosado diagnosed Yohe with hyperlipidemia, depression, and chronic obstructive pulmonary disease ("COPD"). (*Id.*).

On January 18, 2019, Yohe checked herself into the UPMC Newport emergency department because she was coughing up blood. (Tr. 404). CRNP Rosado suspected the cause was pneumonia and ordered chest x-rays and a CT scan. (Tr. 404-05). For reasons unclear on this record, no imaging was obtained for over 18 months. Instead, the next record is from UPMC Newport on September 6, 2019, where Yohe reported intense bilateral heel pain. (Tr. 409-10).

On November 7, 2019, Yohe began treatment at Newport Counseling Center LLC ("NCC") with Licensed Clinical Social Worker

3

and Certified Clinical Trauma Professional Jennifer Peck. (Tr. 357). At that intake session, Ms. Peck diagnosed adjustment disorder with depressed mood. (*Id.*) At a follow up one week later, Ms. Peck recorded that Yohe's progress was "poor." (Tr. 356).

On April 7, 2020, CRNP Rosado noted Yohe's bilateral leg pain and swelling were not abating and that her reports of pain were increasing, and she prescribed Naproxen. (Tr. 428-29). On July 29, 2020, Yohe underwent a series of nerve-function related tests at Pinnacle Health Neurosurgery & Neuroscience. (Tr. 514). Dr. Atul Mangla noted that Yohe had two abnormal nerve results: the right superficial peroneal nerve had an abnormal sensory conduction result, and the right tibial nerve was abnormal in the "H reflex study." (*Id.*). An EMG study also returned findings suggestive of two potential nerve issues. (*Id.*). On October 8, 2020, Yohe saw CRNP Rosado at UPMC Newport, at which time it was noted Yohe had a new cough and continued to suffer from bilateral leg pain and anxiety. (Tr. 447).

On October 10, 2020, Yohe consulted with Dr. Adam Buerk at Orthopedic Institute of Pennsylvania ("OIP"). (Tr. 525). Yohe reported

4

constant bilateral soreness and rated her pain at 8/10. (*Id.*). Dr. Buerk assessed bilateral lower extremity radiculopathy and multilevel spondylosis of the lumbar spine. (*Id.*). A few weeks later, Yohe received an x-ray of her lumbar spine, which showed mild to moderate multilevel spondylosis. (Tr. 527). On November 24, 2020, Yohe received chest x-rays at UPMC which showed "probable emphysema and mild chronic lung disease without consolidation." (Tr. 363). CRNP Rosado noted these images showed unresolved pneumonia and diagnosed Yohe with memory loss and chronic fatigue at this visit. (Tr. 454, 456).

In January of 2021, an MRI of Yohe's lumbar spine showed, *inter alia*, facet arthropathy at L3-L4, L4-L5, and L5-S1, and mild diffused disc bulging at L5-S1. (Tr. 529). In April, Yohe complained to CRNP Rosado about issues with rheumatoid arthritis, specifically, that she was developing "trigger fingers" in two of the fingers on her right hand. (Tr. 470). Dr. Buerk at OIP later assessed Yohe with two trigger fingers and counseled her on both conservative and surgical options. (Tr. 531).

Yohe underwent pulmonary function testing with Dr. Joanna Cruz in July, which showed mild, reversible, obstructive lung disease and

significant BDR consistent with asthma. (Tr. 370). On August 27, 2021, Yohe received an injection from Dr. Buerk of betamethasone and lidocaine into both trigger fingers. (Tr. 533). She reported some improvement, but on December 1, 2021, underwent a successful surgery on both trigger fingers. (Tr. 528, 538).

On December 13, 2021, Yohe treated with CRNP Rosado, who noted the following unresolved or ongoing issues: chronic anxiety, major depressive disorder, a BMI under 19, mild COPD, bilateral leg pain, herniation of intervertebral disc L5-S1, Raynaud's phenomenon without gangrene, bilateral hand pain, lumbar radiculopathy, vitamin D deficiency, and primary osteoarthritis involving multiple joints. (Tr. 496-98). In addition, on December 17, 2021, Yohe had a post-surgical follow up with Dr. Buerk at OIP. (Tr. 540). Dr. Buerk diagnosed Yohe with two additional trigger fingers, this time on her left hand, and later underwent a successful surgery in February of 2022. (Tr. 540, 561-62).

It is against this factual backdrop that the ALJ conducted a hearing in Yohe's case on December 13, 2022. (Tr. 43). Yohe and a vocational expert ("VE") both testified at this hearing. (*Id.*). Yohe described, *inter*

*alia*, her difficulties with rheumatoid arthritis, how she was medicating to manage the pain of that condition, her depression, her part-time cleaning work, her substance use, and how her daughter lives with and assists her. (Tr. 60-76). The VE answered hypothetical questions from both the ALJ and Yohe's attorney about the employment prospects of a hypothetical person with certain combinations of Yohe's alleged limitations. (Tr. 76-85).

Following this hearing on December 13, 2022, the ALJ issued a decision denying Yohe's application for benefits for the period from September 13, 2021, to March 15, 2023, but approving the application as of March 16, 2023. (Tr. 32-34). The ALJ explained that Yohe was less than one month away from reaching an "advanced age," and that additional fact, combined with the other evidence on record, rendered her disabled as of that date. (*Id*). In the decision, the ALJ first concluded that Yohe had not engaged in substantial gainful activity since the date of application, September 13, 2021. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Yohe had the following severe impairments: degenerative disc disease, spondylosis of

the lumbar spine, degenerative joint disease/osteoarthritis with trigger fingers, mild COPD with bronchodilator reversibility, asthma, pulmonary nodules, major depressive disorder, generalized anxiety disorder, alcohol-induced insomnia, alcohol abuse, and cannabis use disorder. (*Id.*). At Step 3 the ALJ determined that Yohe did not have an impairment or combination of impairments that equaled one of the listings. (Tr. 19).

Between Steps 3 and 4 the ALJ concluded that Yohe retained the following residual functional capacity to:

> "[P]erform less than the full range of light work as defined in 20 CFR 416.967(b). She would be limited to lifting and carrying ten pounds frequently and twenty pounds occasionally. She is able to stand and/or walk six hours in an eight-hour day and sit six hours in an eight-hour day. She would be limited to no more than frequent handling, fingering, occasional crouching, kneeling, stooping, balancing, climbing, crawling. She can tolerate no more than frequent exposure to dust, fumes, odors, gases, chemicals, hot and cold temperature extremes, wetness and humidity, no more than occasional exposure to moving machinery. She is limited to understanding, remembering, carrying out tasks involving simple instructions and making simple decisions, with no more that occasional work setting, process and tool changes and no more than occasional interaction with co-workers and the public. She would be unable to perform production rate work or work requiring hourly quotas."

(Tr. 24).

In reaching this RFC determination, the ALJ considered Yohe's reported symptoms as well as the medical opinions and prior administrative medical findings on record. (Tr. 24). As to Yohe's alleged physical impairments, the ALJ found that Yohe's medical records included "abnormal findings" but also that they contained "substantial evidence that is not consistent with [Yohe's] allegations pertaining to her severe physical impairments." (Tr. 26). The ALJ pointed to evidence establishing that Yohe's treatment measures "are effective in limiting [Yohe's] symptoms" and demonstrated that Yohe "does not experience symptoms related to her severe physical impairments with the frequency, intensity, and persistence alleged by the claimant." (Tr. 27).

Considering Yohe's alleged mental impairments, the ALJ found symptom evidence and some objective evidence indicating the presence of depression and anxiety. (Tr. 27). But the ALJ found that there was "notable evidence" that was not consistent with Yohe's alleged mental impairments. (*Id.*). Ultimately the ALJ found that Yohe's treatment for

mental health was effective, and her reported symptoms were not consistent with the objective evidence. (Tr. 27-28).

The ALJ further noted that Yohe's reported daily activities evinced some relevant limitations. (Tr. 28). But the ALJ found those reports inconsistent with the objective medical evidence and evidence that Yohe worked as a cleaner. (*Id.*). Similarly, the ALJ found Yohe's allegations of medication side effects were not supported by the medical record and did not include any limitations to that effect. (*Id.*).

The ALJ then considered the medical opinion evidence. She considered the opinion of John Kajic, Psy.D. (Tr. 29). Dr. Kajic opined that Yohe had mild limitations in understanding, remembering, and carrying out simple instructions, moderate limitations to her ability to make judgments on simple work-related tasks, and marked limitations in carrying out complex instructions, interacting appropriately with others in the workplace, and in responding appropriately both to usual work situations and to changes in a routine setting. (Tr. 741-46). The ALJ found this opinion partially persuasive. (Tr. 29). The ALJ reasoned that Dr. Kajic's opinion was supported by his own clinical examination

findings but was inconsistent with some of the other evidence on record, including some of his own notations. (*Id*.).

The ALJ found the opinions of both state agency psychological consultants to be persuasive. (Tr. 29-30). They opined that Yohe had moderate limitations in understanding and memory, social interaction, sustained concentration, and adaptation, and moderate limitations in understanding, remembering, or applying information, interacting with others, concentration, persistence, and maintaining pace. (Tr. 110-21, 123-34). The ALJ found those opinions were supported by the consultants' explanatory comments, which included references to findings in other examinations on record. (*Id*.). She also found these opinions to be consistent with the medical records. (Tr. 30).

The ALJ found the opinions of both state agency medical consultants to be "persuasive to the extent they indicate [Yohe] is limited to a range of work at the light exertional level." (*Id*.). The ALJ noted those opinions were supported by the consultants' explanatory comments, which included references to findings in other examinations

on record. (*Id.*). She also found these opinions to be generally consistent with the medical record. (*Id.*)

The ALJ also considered the opinion of Dr. Ahmed Kneifati. Dr. Kneifati opined that Yohe could occasionally lift up to ten pounds, occasionally use ramps, stairs, ladders, or scaffolds, occasionally balance, stoop, kneel or crawl, walk no more than ten minutes at a time, and over an eight-hour workday could sit for up to six hours, stand for up to three hours, and walk for up to two hours. (Tr. 723-32). The ALJ found this opinion unpersuasive. (Tr. 28-29). The ALJ explained Dr. Kneifati's opinion was somewhat supported by certain clinical observations he made but was not consistent with his own observations or with some of the documented clinical evidence. (Tr. 29).

The ALJ considered the opinion of CRNP Rosado, which opined that Yohe's symptoms would "constantly" interfere with attention and concentration on simple work tasks; she was incapable of even "low stress" jobs; she could stand, sit, or walk for less than two hours in an eight hour day; would need a twenty minute break every hour; could never lift or carry any weight in a work situation; could never climb

ladders or stairs; could not use her hands or fingers to twist objects or manipulate them; and would be absent from work three days a month. (Tr. 542-45). The ALJ found this opinion unpersuasive, reasoning that while the opinion was supported by her explanatory comments and references to the record, the opinion was inconsistent with specific documented clinical observations on record, Yohe's reported work activity outside the home, and Yohe's activities of daily living. (Tr. 30-31).

At Step 4, the ALJ found that Yohe had no relevant past work but found at Step 5 that, up until March 16, 2023, Yohe could have performed other jobs that existed in significant numbers in the national economy, such as cleaner and café attendant. (Tr. 32). Having reached these conclusions, the ALJ determined that Yohe had not met the demanding showing necessary to sustain her claim for benefits from September 13, 2021, through March 15, 2023, and denied the claim as to that time frame. (Tr. 32-33). The ALJ also determined that because Yohe was approaching advanced age, she became disabled as of March 16, 2023, and that disability was expected to last twelve months past the onset

date, entitling her to supplemental security income from March 16, 2023, onward. (Tr. 33-34).

This appeal followed. (Doc. 1). On appeal, Yohe challenges the adequacy of the ALJ's decision as to the period that disability was denied arguing the decision was not supported by substantial evidence because of the ALJ's treatment of Dr. Kneifati's opinion. (Doc. 15). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

## III. <u>Discussion</u>

### A.  <u>Substantial Evidence Review – the Role of this Court</u>

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only— 'such

15

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must

18

sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ

20

must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record,

whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in September of 2021, after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and

22

supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's

23

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D.    <u>This Case Will Be Affirmed.</u>

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Yohe challenges the ALJ's treatment of Dr. Kneifati's opinion. Yohe argues that the ALJ's obligation to discuss the "consistency" and "supportability" of each medical opinion amounts to an imposition of four distinct requirements upon the ALJ. (Doc. 15 at 7-8.) But the governing statute requires only that the ALJ "explain how [she] considered the supportability and consistency factors[.]" 20 CFR § 404.1520c(b)(2). Past that mechanical requirement, all that is necessary is that the ALJ's

24

decision must permit a subsequent reader to "trace the path of [the ALJ's] reasoning." 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017); *see also, Erica S. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1269788, at *7 (D.N.J. Apr. 28, 2022) (explaining the ALJ need only demonstrate a "logical bridge" between the evidence and her conclusion).

The ALJ considered both supportability and consistency and articulated a logical bridge between the record evidence and her conclusion here. She explained that Dr. Kneifati's opinion was somewhat supported by his observation that Yohe "had difficulty squatting" and his findings "of tenderness of the proximal interphalangeal joints of all fingers, tenderness and decreased range of motion of the knees, and decreased grip strength[.]" (Tr. 29). She also found Dr. Kneifati's opinion inconsistent with some of his own observations and with other documented clinical examination findings. (*Id.*). This is sufficient for us to trace the ALJ's logic.

Yohe further complains that the portion of the ALJ's decision that pertains to Dr. Kneifati leaves out certain specific record evidence. (Doc 14 at 9-10). But the ALJ is not required to explicitly discuss every piece

25

of medical evidence. 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017); *see also, e.g., Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 788-89 (3d Cir. 2003) (non-precedential). To the extent that Yohe is arguing that the ALJ should have considered other specific evidence in the record that she believes supports a finding of disability, such an argument amounts to a request that we reweigh the evidence, which we may not do. *Chandler*, 667 F.3d at 359. We find no basis for a remand here.

As we have explained, we are not permitted at this stage to reweigh the evidence, *Chandler*, 667 F.3d at 359, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence." *Biestek*, 139 S. Ct. at 1154. Given that the ALJ considered all the evidence and adequately explained her decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

26

IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: February 25, 2025

27